LAS MONJAS RACING CORPORATION ET AL., Plaintiffs and Appellants, *v.* INSULAR RACING COMMISSION ET AL., Defendants and Appellees.

No. 5217.   Argued March 9, 1933.—Decided November 23, 1933.

*Leopoldo Feliú* and *M. Martínez Dávila* for appellants.   *J. Martínez Dávila* for appellees.

MR. JUSTICE HUTCHISON delivered the opinion of the Court.

Plaintiffs brought this action to enjoin the enforcement of an order fixing the price of certain printed forms known as *papeletas* at twenty-five cents, including therein the cost of the combination, in addition to the one-cent tax imposed by law, and forbidding the sale of *papeletas* at a higher price than the maximum total so prescribed. After the filing of an answer by defendants, the case was submitted on the pleadings and the district court dismissed the action.

A *papeleta* is designed for the making of a single combination. A number of different combinations may be played on another printed form known as a *cuadro*. A combination is a list of as many horses as there are races on a given official program. One horse is selected from among those which are to run in each race. Each bettor pays into the

pool twenty-five cents for each combination played by him. For many years prior to an unspecified date alleged in the complaint to have been recent, race-track owners and operators had been selling blank *cuadros* and distributing blank *papeletas* free of charge. The purchaser of a blank *cuadro* in addition to the price paid for the printed form paid into the pool twenty-five cents for each combination. The bettor who used a *papeleta* likewise contributed twenty-five cents to the pool for his single combination but paid nothing for his blank *papeleta*. The pool is now and has always been the aggregate of the amount paid in by all the bettors at the rate of twenty-five cents for each combination.

Section 15 of the Racing Act, as amended by the Legislature at its regular session in 1929 (Session Laws, p. 244), provided: "That the blank forms used for pool combinations shall be sold by the corporation operating the race-track, at five (5) cents each, and the proceeds of the sale of such blank forms, after deducting two (2) cents from the price of each form for expenses incurred in the printing and sale thereof, shall be covered into the Insular Treasury, to be used by the Commissioner of Health in the prophylaxis of tuberculosis in children." Before this amendment went into effect, however, section 15 was again amended at the special session of the same year and the provision just quoted was omitted. At the same time section 40 was amended (Special Session Laws, pp. 22, 24) to read in part as follows:

"Combination blanks for the pool may be sealed only on the days on which horse races are held and in connection therewith, in such places within the race-tracks of the Island where the races for which such blanks are destined are to be held . . . Blanks for such combinations may be issued and sold anywhere by such persons or entities as may be authorized to do so by the associations, corporations, or persons owning or operating said race-tracks; *Provided,* that pool combination blanks shall be understood to mean the *papeletas* on which one single combination is played as well as the *cuadros* on which one or more combinations can be played. The *papeletas* shall be sold for twenty-five cents each, plus one cent additional as a tax;

*Provided, further,* that on each blank *cuadro,* the price of which is hereby fixed at five cents, an additional five cents shall be charged as a tax. Said taxes shall be charged (*sic*) by the association, corporation or person owing or operating the race-tracks, and in accordance with the number of *papeletas* and *cuadros* sealed pursuant to the official liquidation of the pool on each racing day, the taxes so collected shall be covered into the Insular Treasury, at the disposal of the Commissioner of Health to be expended by him for the prophylaxis of tuberculosis in children, in such form and manner as he may deem advisable.''

Obviously the primary purpose of this legislation was to raise money by taxation for the prevention of tuberculosis in children. As to the thought uppermost in the mind of the Legislature, the amount of the tax and the proportionate burden to be borne by the bettor who played a single combination and by the bettor who played a series of combinations, the language is perfectly clear. The confusion arises only in connection with the question as to whether the bettor who played a single combination was to pay in addition to the tax imposed upon him, double the amount which the player of a series of combinations was required to pay for each combination. Here the language used by the Legislature must be construed in the light of pre-existing conditions and long-established custom.

For many years the player of a series of combinations and the player of a single combination had contributed alike the sum of twenty-five cents for each combination. The player of a series had always paid something for his blank *cuadro.* The player of a single combination had never paid anything for his blank *papeleta.* The Legislature at its regular session, exacted from the player of a single combination the same amount that it exacted from the player of a series of combinations. By the terms of the law as reenacted at the special session, the player of a series of combinations was required to pay a tax of five cents, while the player of a single combination was required to pay a tax of only one cent. In this the Legislature apparently intended to correct

the injustice involved in the law just passed at its regular session by making a marked distinction in favor of the player of a single combination. This much seems to be reasonably clear. The fact that the Legislature exacted from the player of a single combination one-fifth of the tax imposed on the player of a series of combinations can hardly be reconciled with the theory of a coexistent purpose to compel the player of a single combination first to pay to the race-track owner or operator as the price of his blank *papeleta* five times as much as the player of the series of combinations must pay for his blank *cuadro,* and then to contribute to the pool the same amount that he had paid for his *papeleta,* which by some strange coincidence is the same amount that the player of a series of combinations must contribute for each combination played by him.

Section 40 provides for the sale of blank *cuadros.* On the other hand *papeletas,* not necessarily blank *papeletas,* are to be sold for twenty-five cents plus the one-cent tax. More specifically section 40 provides that "pool combination blanks shall be understood to mean the *papeletas* on which one single combination *is* played as well as the *cuadros* on which one or more combinations *can be played.*" It is the blank *cuadro* upon which a series of combinations *can be* played for which the bettor pays five cents in addition to the five-cent tax. It is the *papeleta* upon which a single combination *is* played for which the bettor pays twenty-five cents in addition to the one cent tax.

One matter that the Legislature at its regular session did consider in connection with the amount of the tax was the cost of printing and selling the blank forms used for pool combinations. The cost of each printed form was estimated at two cents. Provision was made for reimbursement of this amount. It was not contemplated that the race-track owner or operator would make any profit out of the transaction. On the basis of the estimate made at the regular session, the race-track owner or operator would make a profit of three

724

cents on the sale of each blank *cuadro* at the price subsequently fixed by the Legislature. It is not probable that the same Legislature, which permitted a profit of three cents on the sale of each blank *cuadro* at five cents in addition to a five-cent tax, intended to allow a profit of twenty-three cents on the sale of each *papeleta* at twenty-five cents in addition to the one-cent tax. The Legislature knew that race-track owners and operators had always made a profit on the sale of blank *cuadros*. It knew that they had always distributed blank *papeletas* free of charge. It knew that the bettor who used a *papeleta* had always contributed twenty-five cents to the pool as the total cost of his combination. If the Legislature, having these things in mind, had intended to exact from the bettor who uses a *papeleta* a tax of one cent in addition to the former cost of his combination and then permit the race-track owner or operator to collect from him first twenty-five cents as the price of his blank *papeleta* and later, after appropriating this amount to its own use, another twenty-five cents as his contribution to the pool, such an intention we are constrained to believe would have been much more clearly expressed.

We cannot say that the district court erred in construing the law as did the Racing Commission in its order of October 28, 1929.

The judgment appealed from must be affirmed.